McClintic Marshall Construction Company

*v.*

The Board of Chosen Freeholders of the County of Hudson et al.

———

William B. Waldo

*v.*

The Board of Chosen Freeholders of the County of Hudson et al.

———

Edmund B. Vanderbilt et al., partners, &c.,

*v.*

The Board of Chosen Freeholders of the County of Hudson et al.

[Decided September 8th, 1914.]

1. A contract for the construction of a steel and concrete viaduct provided that the contractor should pay the board of freeholders of the county for delay in completing the work, if any, beyond the time fixed for completion at the rate of $1,500 per month on the first section, $600 per month on the second section, and $650 per month on the third section, which sum was stipulated to be the true value of the use of the land to the board of freeholders and the true damages it would sustain by such delay, which the board was authorized to retain out of any moneys due or to become due to the contractor.—*Held*, that the damages provided for were liquidated damages, and not a penalty.

2. Where three contracts were entered into between defendant board of freeholders of a county and a contractor for the construction of a viaduct, and each provided that the board or its engineer should designate the day and place or places when and where the contractor should com-

mence work, and that the contractor should complete the same within eighteen months thereafter or be subject to specified deductions for delay as liquidated damages, the contractor was entitled to a notice from the board or its engineer, plainly stating when the contract term would begin to run against him as to each section of the work, and, no such notice having been given, he was under no liability for delay.

On pleadings and proofs.

*Messrs. Cortlandt & Wayne Parker,* for the complainant, McClintic Marshall Construction Company.

*Mr. Randolph Perkins,* associated with *Mr. Frank M. Patterson* (of the New York bar), for the complainant, William B. Waldo, and his trustee.

*Mr. Thomas E. Haight* and *James J. Murphy,* for the defendant the Board of Chosen Freeholders of the County of Hudson.

*Mr. Joseph S. Parry,* for Edmund D. Vanderbilt and Henry H. Vanderbilt, executors of the estate of Jacob Vanderbilt, deceased.

*Mr. Joseph F. Autenrieth,* for Robert W. Hunt Company.

*Mr. Theodore Rurode,* for Mack Manufacturing Company.

*Messrs. Hudspeth, Rysdyk & Garrison,* for Citizens National Bank of Toranda and Mechanics Bank of Groton.

LEWIS, V. C.

These actions have been consolidated. They were brought under the

"Act to secure the payment of laborers, mechanics, merchants, traders and persons employed upon or furnishing materials toward the performing of any work in public improvements in cities, towns, townships and other municipalities in this state,"

CASES IN CHANCERY, 1914.     541

*83 N. J. Eq.*    McClintic Marshall Co. *v.* Hudson Freeholders.

approved March 30th, 1892, and by the decision in the court of errors and appeals in this state in the case of *Delafield Construction Co.* v. *James R. Sayre, Jr., et al.,* such actions must be brought in the court of chancery.

By stipulation of counsel the question of damages has been submitted to this court, counsel of the respective parties having reached an agreement among themselves in regard to the other questions involved in the suits.

The suits are brought for the purpose of obtaining money alleged to be due to the various complainants for work done and materials furnished in the construction of a municipal improvement known as the "Fourteenth Street Viaduct." This structure was erected under three separate contracts, which were entered into between the Owego Bridge Company, a corporation, and the board of chosen freeholders of the county of Hudson, in June, 1907. For the purpose of erection the viaduct was divided into three sections and a separate contract was entered into for each section. The viaduct is built in the shape of the letter "Y," the first section extending from Willow avenue, Hoboken, to the point where the two branches of the "Y" separate; the second section is the projection on the left, and the third section is the projection on the right. The contracts were subsequently assigned by the Owego Bridge Company to the Syracuse Bridge Company, one of the defendants in these actions, this being done with the consent of the board of freeholders, and the Syracuse Bridge Company took upon itself the fulfillment of all the duties and obligations contained in the original contract. The complainants and the other defendants are subcontractors. The McClintic Marshall Construction Company had the subcontract for the steel work; William B. Waldo had the subcontract for the concrete, paving, excavation, &c., and the other parties various other works. The first and second sections were completed on June 1st, 1912, and the third section on November 7th, 1912.

The county seeks to deduct from the moneys which would otherwise be due, damages for delay in completion, which is resisted by the other parties to the suit.

Each of the contracts provides (paragraph D, page 54 of printed book)

"that the contractor shall commence work on such day and at such place or places as the board of chosen freeholders or the engineer may designate, and progress therewith so as to complete the work in accordance with this agreement, on or before the expiration of one year and six months after being directed to begin work," etc.

The contract further provides (same section) as follows:

"And in the computation of said time (expressed in days or parts of days) during which the work, or any part or section thereof, has been delayed in consequence of the condition of the weather, or by any act or omission of the parties of the first part (the board of freeholders), or strikes beyond the control of the party of the second part (the contractor) whereby the receipt of material is delayed (all of which shall be determined by the engineer, who shall certify the same in writing), and also the time during which the prosecution of the whole work is suspended by the engineer, shall be excluded. But if the performance of the contract shall require work or materials in greater or less amounts or quantities than those mentioned and set forth in the engineer's estimate, then the said time will be increased or diminished as much as the engineer shall deem just and reasonable and fairly proportionate to the amount of said increase or diminution."

It appears that the contractor, which was then the Owego Bridge Company, was ordered to begin work on September 19th, 1907, at the intersection of the West Shore railroad and Fourteenth street, Hoboken. The communication containing this order is dated September 5th, 1907, and is signed by the engineer. This communication was acknowledged on September 6th, 1907, by the Owego Bridge Company. The place which was designated to begin the work was on section 1. On September 27th, 1907, the Owego Bridge Company wrote to the engineer, as follows:

"We find that the board of freeholders have not secured any property whatever on the line of the Fourteenth street viaduct, in Hoboken, so we can commence the sub-structure work to any advantage, being confined to the street entirely. This, as you know, is a great disadvantage to us, and will make us extra expense in doing this work. We, therefore, want to give you notice that all this will be taken into consideration as to the time that we commence the contract. We will want to be allowed all extra time that we lose in any delay caused by our not having the entire right of way and property so we can work to an advantage."

On December 31st the engineer wrote:

"*Mr. A. H. Mallery,*
	"*Owego Bridge Company.*
	"In reply to your question for the extension of time for the three contracts known as sections 1, 2 and 3, and specifications for the 14th Street, Hoboken, viaduct, I am advised by our counsellor, Mr. John Griffin, that this work is not officially commenced until all the land is secured on each of the sections. The land for the first section will be secured about the 15th of February, 1908, and the eighteen months specified in your contract should commence on that date, if the land is secured. At present writing we cannot even give an idea when all the land will be secured for the other sections. We will most likely secure the Holland property next month, which will give you sufficient area to secure crushed stone for foundations and permit the erection of the steel work."

The last piece of property on the right of way of section 1 was acquired on September 30th, 1907, but the owner was not actually ejected from the property until November 1st, 1908. The last piece was acquired on section 2 from the owner on June .25th, 1909, and on the third section, the last piece was acquired on July 3d, 1908.

Work was started on the first section in the latter part of October, 1907. The board of freeholders contend that the contractor was verbally notified to begin work on the second section on April 1st, 1908, and it will be noticed that this alleged notification was before all the land on that section had been acquired. The board of freeholders also contend that work on the third section began in September, 1908.

The contract provides, clause "E" (page 55 printed form) :

"that the contractor shall pay the board for delay in the completion of the said work, if any, beyond the time fixed for completion (unless the same be extended by a proper authority, or permissible under this contract) at the rate of (different amounts as to each section, as will be hereinafter set forth) per month, which said sum it is hereby stipulated and agreed is the true value of the use of said land to the board and the true damages it will sustain by such delay, which said sum the said board is authorized and empowered to retain out of any moneys due or to grow due to the contractor."

On the first section the damages were fixed at the sum of fifteen hundred dollars($1,500) per month; on the second section, six hundred dollars ($600) per month, and on the third section, six hundred and fifty dollars ($650) per month.

Counsel for the various claimants have raised two questions regarding the right of the county to claim allowance for delays—

*First.* That the moneys specified in the contracts to be paid by the contractor for delays are penalties and not liquidated damages.

*Second.* That the county itself caused delay to the contractor in the prosecution of the work, and is, therefore, not entitled to avail itself of the right to claim the damages which the contract provides is payable to it for delays.

Of course, the county board will be held to a strict performance of the contracts—that is, it must perform all the conditions which are requisite for it to perform before the contractor can be held liable for liquidated damages. Outside of the question of liquidated damages, however, compensatory damages would be allowed if there were unreasonable delay in the prosecution of the work.

There is no doubt, in my mind, that the damages provided for in the contract are, under the cases in this state, liquidated damages.

See *Monmouth Park Association* v. *Wallis Iron Works*, 55 N. J. Law 132; *Robinson* v. *Centenary Fund*, 68 N. J. Law 723; *Moore* v. *Durnam*, 63 N. J. Eq. 96; *Brown* v. *Norcross*, 59 N. J. Eq. 427; *Gussow* v. *Beineson*, 76 N. J. Law 209; *Jersey City* v. *Flynn*, 74 N. J. Eq. 104; *affirmed*, 76 N. J. Eq. 607; *Tilton* v. *McLaughlin*, 83 N. J. Law 107; *Van Buskirk* v. *Board of Education*, 78 N. J. Law 650.

Under the evidence, however, I do not feel that liquidated damages could be allowed—that it would be inequitable. There were three contracts and each one contained the clause that the board of chosen freeholders or the engineer were to designate the day and the place or places when and where the work was to commence. I shall find that the contractor was entitled to three distinct notices, one for each of the sections, clearly notifying him when the eighteen months began to run against him in each case. I think he was clearly entitled to that, and if he was left in doubt about such a vital matter, he should have the benefit of it. He was notified by the engineer (who had the necessary power under the contract to give such notice) to commence work

on section 1. Afterwards, the engineer clearly countermanded that order, according to my view, by his letter to Mr. A. H. Mallery on December 31st (*supra*), and thereafter, my finding is, that the contractor did not receive any sufficient notice that would bind him to pay the liquidated damages, and the same is true as to sections 2 and 3, so far as the lack of proper notice sufficient to bind the contractor to pay liquidated damages is concerned.

In the case of *Hoey* v. *Jarman, 39 N. J. Law 523,* I find the rule there stated to be, that where there is ambiguity or obscurity which the other parts of the instrument do not explain, it is to be construed against the party giving the contract.

As I have already found, I do not feel that liquidated damages should be allowed, and I do not think that there has been any sufficient evidence produced from which I could draw any conclusion with respect to the allowance of compensatory damages. The evidence convinces me that the entire course of conduct and dealings between the board and the contractor was such as to evince an acquiescence on the part of the board in the length of time actually taken to complete the work.