The question is, whether Randolph Perkins, a solicitor of this court, who received $7,011.00 under the decree of December 28th, 1914, as counsel fee, inclusive of all fees and *Page 12 
costs, in the case of McClintic-Marshall Construction Co. v.The Board of Chosen Freeholders of the County of Hudson et al.,83 N.J. Eq. 539, has the right to retain the further sum of $7,030.60 from the $24,000 belonging to his clients under the terms of the decree for his personal compensation, disbursements and taxed costs.
Perkins, as the decree recites, was solicitor for William D. Waldo and also for Lindsay Russell, trustee in bankruptcy of Waldo, and for Clifford M. Tappen, trustee in bankruptcy of William F. Wyckoff. The suits in which he was solicitor were chancery suits to foreclose municipal liens against the county of Hudson.
On March 14th, 1911, he began to represent Waldo. On March 15th, 1911, he began to represent Wyckoff. On April 8th, 1911, Waldo assigned to Wyckoff all moneys due and to grow due under the contract named in the assignment. On January 15th, 1913, Waldo was adjudicated a bankrupt in the United States district court for the eastern district of New York. On February 14th, 1913, Wyckoff was adjudicated a bankrupt in the same court. Lindsey Russell became trustee in bankruptcy of Waldo, and Clifford M. Tappen became trustee in bankruptcy of William F. Wyckoff. The attorney of Waldo's trustee in New York was Frank M. Patterson. The attorney of Wyckoff was August Kiendl.
On August 1st, 1913, the Creditors' Holding Company, Inc., was organized to represent the creditors of Wyckoff.
The Creditors' Holding Company purchased by bill of sale, which is in evidence, the assets of William F. Wyckoff, who was in bankruptcy.
During the progress of the trial in this court it turned out that before Waldo had filed his lien he had assigned his claim to Wyckoff, and after the introduction in evidence of the assignment made by Waldo to Wyckoff, Mr. Perkins secured the consent of all of the parties to the suit that Wyckoff might be considered a party, but no formal order was entered. On December 15th, 1919, the trustee in bankruptcy of Waldo executed a consent, pursuant to court order, to the payment to the Creditors' Holding Company, Inc., of all moneys and *Page 13 
accumulated interest thereon paid to Perkins in settlement of the claims of Waldo and Wyckoff against the Syracuse Bridge Company and the board of chosen freeholders of Hudson county; the date when the decree was signed was December 28th, 1914.
On January 17th, 1915, Perkins received $24,000, adjudged in that decree to be due to the trustees in bankruptcy of Waldo and Wyckoff, respectively, and received also the $7,011 ordered paid by that decree to Perkins, as solicitor for Waldo, Wyckoff and their trustees in bankruptcy.
Besides the $7,011 which Perkins obtained under the decree of December 28th, 1914, Perkins retained the further sum of $7,030.60 from the $24,000 adjudged in the decree to be due to the trustees in bankruptcy of Waldo and Wyckoff.
Mr. Perkins claims that he retained this additional amount from the $24,000 because of the fact that he had a definite, positive arrangement between himself and Mr. Patterson, the trustee in bankruptcy of Waldo, that if Perkins could bring about the settlement of the whole litigation and realize out of the whole wreck $24,000 for the Waldo interests, Perkins was to have out of that $24,000 a fee of $5,000 and his disbursements, in addition to anything the court would allow him out of the fund. The fund belonged to the Syracuse Bridge Company, subject to the liens. When all the liens were paid, the balance of the money would go to the Syracuse Bridge Company. Carlyle Garrison represented the Syracuse Bridge Company, and he, and, in fact, all of the solicitors, consented to the final decree. Mr. Garrison testified that he had an agreement with the Syracuse Bridge Company that the money coming to the Syracuse Bridge Company would be paid to him as his fee, and that he agreed with Perkins that he would divide his (Garrison's) fee equally with Perkins.
Mr. Perkins denies absolutely that he ever represented the Creditors' Holding Company as solicitor or attorney, or in any other capacity, and denies its right to file this petition.
That question is not free from difficulties, as this is a proceeding which is highly penal and quasi-criminal, and it has *Page 14 
been held in some states that it may not be resorted to by an assignee of the claim. 6 Corp. Jur. 713, and many cases cited;Crane v. Gurnee, 75 N.J. Eq. 104; Lynde v. Lynde, 64 N.J. Eq. 736; Strong v. Mundy, 52 N.J. Eq. 834; Tate v. Field,60 N.J. Eq. 42. Also, see 2 Decen. Dig. ("Attorney and Client") § 126.
On March 31st, 1915, Perkins wrote to Frank M. Patterson, the attorney of Waldo's trustee in bankruptcy, and to Oscar W. Swift, the attorney of the Creditors' Holding Company, Inc. This letter states that he has gone over the viaduct cases with a great deal of care, and "in order that both of you gentlemen may be informed of the situation, I am giving you a brief summary of the matter from its inception down to the present time." The letter then reviews the litigation, setting forth the amounts received by the parties in interest under the decree, and the letter goes on to say, "the balance of the fund being consumed in court expenses and fees." The letter also says: "I was authorized to settle the Waldo and Wyckoff claim for $24,000, with the understanding that my fee would be $5,000, in addition to my actual disbursements and taxed costs."
This letter does not state the amount received by Perkins, $7,011, but says: "As you gentlemen will undoubtedly observe, I have spent a great deal of time on this case running over a period of upwards of four years. From the very inception of the matter I never received any money for my services. If I were unsuccessful in making final collections I suppose I never would have received any compensation. Having been successful in obtaining a settlement as above related, I think a fee of $5,000 small under the circumstances, but having agreed upon that figure, of course, I abide by it."
The arrangement that Mr. Perkins claimed was existing as to his fee differs somewhat from his testimony in this respect, that in his testimony he says that he was to have, in addition, any sum the court would allow; but he has explained that to the satisfaction of the court, and I think that Mr. Perkins must prevail, and that will be the order. *Page 15